STIPPICH, Appellant, v. CITY OF MILWAUKEE, Respondent.

*December 2, 1966—April 11, 1967.*

264

For the appellant there were briefs and oral argument by *Maurice Weinstein* of Milwaukee.

For the respondent there were briefs by *John J. Fleming*, city attorney, and *George A. Bowman, Jr.*, assistant city attorney, and oral argument by *Mr. Bowman*.

A brief *amicus curiae* was filed by *Julian Bradbury* of Madison, legal counsel for the League of Wisconsin Municipalities.

HALLOWS, J.   The city grounded its defense solely upon the proposition its liability is limited by sec. 81.15, Stats.,[1] to an insufficiency or want of repair in the sidewalk existing for a period of three weeks and a mere slippery condition resulting from a natural accumulation of snow and ice in winter, in the absence of an underlying defect which would otherwise be actionable, did not satisfy the statute.   Prior to our decision in *Holytz v. Milwaukee* (1962), 17 Wis. (2d) 26, 115 N. W. (2d) 618, which abolished governmental immunity for torts, the dismissal of this case would probably have been affirmed. The city assumed in its argument that the prior decisions

---

[1] "81.15 **Damages caused by highway defects; liability of town and county.** If damages happen to any person . . . by reason of the insufficiency or want of repairs of any highway which any . . . city . . . is bound to keep in repair, the person sustaining such damages shall have a right to recover the same from such . . . city . . . [upon giving a prescribed notice to the city within one hundred twenty days after the accident; but] [n]o action shall be maintained to recover damages for injuries sustained by reason of an accumulation of snow or ice upon any bridge or highway, unless such accumulation existed for 3 weeks." For the purpose of this section, a highway includes sidewalks. *Smith v. Jefferson* (1959), 8 Wis. (2d) 378, 99 N. W. (2d) 119.

of what was held not to be an insufficiency or want of repair or a defect in a sidewalk under sec. 81.15, were applicable to the common-law duty of the city and were unaffected by *Holytz*. We called for additional briefs on the question:

"Does the abolition of governmental immunity render a city liable for a sidewalk found to be unsafe where such condition does not amount to what has been heretofore held to be an actionable defect, insufficiency or want of repair under sec. 81.15?"

It has been suggested the court answered this question in *Dunwiddie v. Rock County* (1965), 28 Wis. (2d) 568, 573, 137 N. W. (2d) 388, when we said:

"In *Holytz* we contemplated the abrogation of the doctrine of governmental immunity would affect the area covered in sec. 81.15, Stats., and, in fact, pointed out that that section in respect to its notice provisions and limitation of amount of damages would stand and be a limitation upon the right to recover. In *Lang v. Cumberland* (1962), 18 Wis. (2d) 157, 165, 118 N. W. (2d) 114, in explaining the effect of *Holytz* in relation to sec. 81.15, we stated, 'Before *Holytz,* liability of the municipality arose by virtue of sec. 81.15 upon the giving of notice. Since *Holytz,* the liability would exist in the absence of the statute, and the statute is a limitation upon it.' But the only limitations of this section are in respect to notice, the limit of the amount of damages, and the requirement that accumulated snow and ice must be of three-weeks' duration."

But the question remained whether the common-law duty of a municipality to construct and maintain a sidewalk in such a condition that it is reasonably safe for public travel by persons exercising ordinary care for their own safety was only coextensive with sec. 81.15, Stats., or whether it exceeded the limits of what had been decided under that section to be neither an insufficiency nor a want of repair. We think the common-law duty embraces a somewhat larger area of what constituted an unsafe

condition than that covered by the language of sec. 81.15. Of course, *Holytz* does not determine what constitutes negligence in this area; that is left to case law. While what affirmatively has been held to be a defect or an insufficiency or a want of repair under sec. 81.15 constitutes common-law negligence, the converse is not necessarily true.

Our reasons for this view are rooted in the history of sec. 81.15, Stats., and in its interpretations over the years. The first provision for liability similar to sec. 81.15 appeared in R. S. 1849, ch. 16, sec. 103, and was in derogation of the common law. During a period of over one hundred years a rather static doctrine of limited liability under sec. 81.15 developed against the background of governmental immunity and in the context of conditions existing at the time of the decision. Recovery for injuries caused by the condition of streets and sidewalks was based upon a waiver of governmental immunity for torts as expressed in the statutes allowing recovery under certain conditions. Sec. 81.15 and its predecessor statutes allowed recovery only for insufficiency or want of repairs, commonly referred to as a defect.

The early cases dealt with defects in sidewalks such as a broken plank, *McLimans v. Lancaster* (1885), 63 Wis. 596, 23 N. W. 689; the difference in elevation of a boardwalk, *Reed v. Madison* (1892), 83 Wis. 171, 53 N. W. 547; or a loose rotten plank, *Barrett v. Hammond* (1894), 87 Wis. 654, 58 N. W. 1053. Trampled upon accumulations of snow and ice on a sidewalk, although slippery and dangerous, were considered to be a normal and natural condition in that day in Wisconsin; shoveling sidewalks or the use of abrasives were the exception, not the rule. These cases reflect a then common viewpoint of a city's duty to render only limited services to its citizens and of a citizen's right to expect no more. It is understandable that in a nonmechanized era a municipality would not be held to a standard of care which required

clearing sidewalks of snow when snow and ice were welcomed on the streets so horses could pull the sleighs and the cutters. But snow and ice are no longer allowed to accumulate on streets and abrasives are used because the safety of modern transportation demands it.

A succinct expression of the rules which evolved requiring a natural accumulation of snow and ice on the sidewalk to amount to a structural defect is found in *Byington v. Merrill* (1901), 112 Wis. 211, 88 N. W. 26, and quoted in *Trobaugh v. Milwaukee* (1953), 265 Wis. 475, 483, 61 N. W. (2d) 866:

> " 'The law is too well settled to require discussion at this time [1901] that the mere slippery condition of a walk, caused by ice forming thereon evenly, or substantially so, or the mere existence of a roughened condition of the surface of a walk caused by footprints in soft, wet snow and its freezing in that condition, does not render such walk insufficient or in want of repair within the reasonable meaning of the statute [sec. 81.15]; but that an accumulation of snow or ice on a walk in a ridge or rounded form, so as to form an obstruction to the use thereof with reasonable safety, by persons in the exercise of ordinary care, does constitute such insufficiency and want of repair.' "

Some of the oft-cited cases developing this rule and its reasons are: *Cook v. Milwaukee* (1869), 24 Wis. 270; *Hyer v. Janesville* (1898), 101 Wis. 371, 374, 77 N. W. 729, wherein it was noted the facts presented only "an accumulation of snow as is usually found on walks in the resident portions of cities and villages in the winter season in this climate. . . . Reasonable care did not require the walk to be scraped clean, down to the planking, or that mere footprints made in the soft snow and frozen in that condition should be removed." *Koepke v. Milwaukee* (1901), 112 Wis. 475, 480, 88 N. W. 238, "The accumulation of ice and snow was nothing more than can be found on hundreds of walks in this state during the

winter months. . . . It constituted no obstruction to travel. . . . no more than the usual accumulation incident to our climate." *Salzer v. Milwaukee* (1897), 97 Wis. 471, 73 N. W. 20; and *Dapper v. Milwaukee* (1900), 107 Wis. 88, 82 N. W. 725. However, the language in *Dapper* to the effect ice and snow on the sidewalk was not actionable unless there was also an underlying defect in the structure of the sidewalk was withdrawn in *Trobaugh v. Milwaukee, supra.* See also *Jacobson v. Milwaukee* (1952), 262 Wis. 256, 55 N. W. (2d) 1. In *Steele v. Chippewa Falls* (1935), 217 Wis. 1, 258 N. W. 181, the court stated the sole question was whether the sidewalk was defective because of an accumulation of snow and ice which was rough and slippery due to frozen footprints. The court considered the walk dangerous but not defective. Thus it was that some unsafe conditions of sidewalks were not actionable at common law because the statutory waiver of governmental immunity was limited.

In *Laffey v. Milwaukee* (1958), 4 Wis. (2d) 111, 89 N. W. (2d) 801; (1959), 8 Wis. (2d) 467, 99 N. W. (2d) 743, this court started to depart from the philosophy of the old cases by holding that the three-weeks' limitation in sec. 81.15, Stats., applied only to a natural accumulation of snow and ice and not to an artificial condition which in that case was caused by city firemen allowing water to remain on a sidewalk so that it froze in a roughened condition. Another step to avoid the result of the rigid rule was the expanding of the nuisance doctrine in sidewalk cases to artificial accumulations of snow and ice. *Smith v. Congregation of St. Rose* (1953), 265 Wis. 393, 61 N. W. (2d) 896. See also *Hoene v. Milwaukee* (1962), 17 Wis. (2d) 209, 215, 116 N. W. (2d) 112; *Walley v. Patake* (1956), 271 Wis. 530, 539, 74 N. W. (2d) 130; (1957), 274 Wis. 580, 584, 585, 80 N. W. (2d) 916.

We need not review the multitude of cases not involving snow and ice construing sec. 81.15, Stats. Many of them

were reviewed in *McChain v. Fond du Lac* (1959), 7 Wis. (2d) 286, 96 N. W. (2d) 607; *Trobaugh v. Milwaukee, supra; Hales v. Wauwatosa* (1957), 275 Wis. 445, 82 N. W. (2d) 301; *Pias v. Racine* (1953), 263 Wis. 504, 58 N. W. (2d) 67. As might be expected in a line of decisions which extend over a period of one hundred years, these cases have not always been consistent in their development, theory or language.

We think the limited scope of a municipality's liability under sec. 81.15, Stats., is no longer applicable to sidewalk cases and the question in such cases is not whether there was a defect, want of repair or insufficiency of the sidewalk which caused the injury but whether under the ordinary common-law rules of negligence the duty to maintain sidewalks reasonably safe was breached. This duty of a municipality to use reasonable care to keep its sidewalks reasonably safe for travel of pedestrians is only that which is reasonable under the circumstances. See Anno. Municipal Liability—Ice or Snow, 39 A. L. R. (2d) 782; Wis J I—Civil, Part I, 1029 and 1029.5. This is not an unreasonable burden because cities can, if they have not already done so, require abutting property owners to clean sidewalks, to use abrasives, and otherwise keep the walk safe for public use. Sec. 66.615 (5) requires a duty to clean sidewalks of snow and ice in all cases where abutting owners or occupants fail to do so and the expense thereof can be charged to the owner. A city is also authorized to impose a fine or penalty. The ultimate duty and responsibility for the safety of sidewalks, however, rests with the city and this responsibility cannot be delegated so as to free it from all liability.

All the limitations of sec. 81.15, Stats., such as notice, amount of recovery, etc., apply to the city's common-law duty and consequently no liability arises because of a natural accumulation of snow and ice existing less than three weeks. In respect to cases like the instant case upon the expiration of three weeks for which the city allowed

such a condition of the sidewalk to exist, the city is still under no absolute or strict liability. Each such case will present questions whether the condition of the sidewalk because of the natural accumulation of snow and ice was dangerous and unsafe and whether the city was unreasonable under all the circumstances in allowing it to remain so. The accumulation of snow and ice resulting in a slippery condition of a sidewalk for three weeks in a business district of a metropolitan city presents a different problem than the same condition in a residential area or in a partially settled outlying area. Likewise, slipperiness or rough and uneven accumulations of snow or ice from natural causes presents different considerations than slipperiness and uneven snow and ice artificially upon the sidewalk, or freezing of water overflowing the walk as in the *Laffey Case*. Location, climatic condition, amount of accumulation, impracticality of removal and many other circumstances must be considered in determining whether the city has failed to do something which it reasonably could have done and which would have removed the danger.

In natural accumulation of snow and ice cases the test is whether the city was negligent under all the circumstances in allowing for over three weeks as limited in sec. 81.15, Stats., the sidewalk to remain in a dangerous and unsafe condition or one not reasonably safe for use by pedestrians exercising ordinary care. See *Ocampo v. Racine* (1965), 28 Wis. (2d) 506, 137 N. W. (2d) 477. In sidewalk cases falling outside the three-week limitation of sec. 81.15 the usual rules of notice in ordinary negligence cases apply; the city's duty is not as an insurer of the safety of sidewalks.

We think in the instant case the evidence sustains the verdict that the city was negligent in allowing the dangerous and unsafe condition of the sidewalk to exist beyond the three-week period. The judgment dismissing the complaint must be reversed and the verdict insofar

as it determined the liability of the city for the dangerous condition of the sidewalk must stand. Since the trial court did not consider the plaintiff's motions to change certain answers of the verdict, the case must be sent back for further proceedings. The failure of the trial court to pass upon the plaintiff's motions under these circumstances was not a denial thereof, hence we do not consider them on appeal.

*By the Court.*—Judgment reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

HANSEN, J., took no part.