WEBSTER, Plaintiff, v. KLUG & SMITH, and others, DE-fendants-Respondents: CITY OF MILWAUKEE, De-fendant-Appellant.

*No. 75–827. Submitted on briefs December 1, 1977.—Decided January 3, 1978.*

(Also reported in 260 N.W.2d 686.)

For the appellant the cause was submitted on the brief of *James B. Brennan,* city attorney, and *Charles R. Theis,* assistant city attorney.

For the respondents the cause was submitted on the brief of *Robert L. Elliott* and *Cook & Franke, S.C.* of Milwaukee.

BEILFUSS, C. J. The case was submitted to the trial court upon a stipulation of facts. The stipulation is as follows:

"1. Defendant Klug and Smith, on behalf of First Federal Savings & Loan Association of Wisconsin, Inc., obtained a street permit from the City of Milwaukee effective February 21, 1972, a copy of which is attached hereto as Exhibit I and made a part hereof, to do work on the corner of North Broadway Avenue and East Wisconsin Avenue in the City of Milwaukee. This work required the use of the sidewalk and 20 feet east from the west curb on North Broadway Avenue and the sidewalk and 10 feet south of the curb on East Wisconsin Avenue between Broadway Avenue and a certain alley, approximately one-half block west of North Broadway Avenue being along East Wisconsin Avenue. As a condition to the issuance of such permit, the City of Milwaukee required the erection of a protected enclosure on East Wisconsin Avenue over a portion of East Wisconsin Avenue which was to serve as a substitute for the sidewalk area on East Wisconsin Avenue which was to be used for the work allowed pursuant to such street permit.

"2. Klug & Smith, pursuant to said permit, constructed a protected enclosure approximately 6 feet in width commencing 10 feet to south of the north curb line of East Wisconsin Avenue and running from North

Broadway Avenue along East Wisconsin Avenue to a certain alley, approximately one-half block west of Broadway along Wisconsin Avenue. This enclosure consisted of a wooden, vertical wall on the south, a wooden, vertical wall on the north and a wooden, horizontal roof connecting said walls. The enclosure was to protect pedestrians and workmen from debris, automobiles and the elements.

"3. At the time Klug & Smith took possession of the premises described in the street permit, the portion over which they built the protected enclosure had been a portion of East Wisconsin Avenue which, prior to the commencement of construction, had been under the exclusive custody and control of the City of Milwaukee for repair and maintenance purposes. Klug & Smith did not make any changes to the roadway portion of East Wisconsin Avenue which became the protected, enclosed sidewalk.

"4. Pedestrian traffic, which, prior to the commencement of construction, had traveled on the paved sidewalk immediately north of the protected enclosure, was routed to and allowed to use the roadway portion of Wisconsin Avenue under the protected enclosure as a sidewalk.

"5. On or about May 24, 1972, the plaintiff Margaret Webster fell and was injured as a result of stumbling on a depression in the portion of East Wisconsin Avenue being used as a sidewalk within the protected enclosure. See Exhibit II showing the depression.

"6. Margaret Webster commenced suit against Klug & Smith, First Federal Savings & Loan Association of Milwaukee, Inc., and the United States Fire Insurance Company, its insurer, and the City of Milwaukee. Klug & Smith, First Federal Savings & Loan Association and its insurer cross complained against the City of Milwaukee for contribution, alleging that if joint causal negligence is found upon First Federal, Klug & Smith and the City of Milwaukee, First Federal and/or Klug & Smith and/or the United States Fire Insurance Company will be entitled to contribution as provided by law from the City of Milwaukee upon the claim of Margaret Webster.

"7. The United States Fire Insurance Company has settled the claim of Margaret Webster on behalf of all the defendants for a total of $9,000 and has obtained a release releasing all defendants. The settlement of $9,000 is fair and reasonable and directly related to

the fall of May 24, 1972. A stipulation has been entered dismissing her claim, however, the releases and stipulation executed make it clear that the cross complaints between the defendants are to be dismissed.

"8. A demand has been made upon the City of Milwaukee for contribution upon the $9,000 paid to Margaret Webster. Such demand has been refused by the City of Milwaukee.

"9. Chester Wszalek was and is a public works inspector with Street Maintenance Department of the City of Milwaukee. In that position his function is, among other things, to inspect streets and roadways over which a construction permit has been granted to determine whether or not such premises are in violation of the permits, in compliance with applicable codes and safety standards. On or about February 15 or 16, 1972 Wszalek received his copy of the permit in question issued to defendant Klug & Smith and went to the described premises. At such time he inspected the roadway portion over which Klug & Smith was to build a protective enclosure and made such inspection to determine whether the roadway was suitable to be used as a sidewalk. Wszalek had no objections whatsoever to the suitability of the roadway as he found it upon his inspection for use as a sidewalk."

The city-appellant raises three issues. One is the contention that the permittee is liable for injuries sustained because of the defect in the temporary sidewalk. Secondly that the permittee had asked for contribution in its pleadings and was erroneously awarded complete indemnification as a subrogee. Thirdly that there was no finding of negligence upon the part of the city and therefore no liability.

The trial court concluded the defect causing the injury was in the surface of the street or temporary sidewalk, and that the city was primarily liable and responsible for the stipulated $9,000 liability to the injured pedestrian.

Sec. 81.15, Stats., provides that if a person or his property are damaged by reason of the insufficiency

or want of repairs of any highway which any town, city or village is bound to keep in repair, the person suffering such damage has the right to recover from such municipality. The word "highway" in the statute includes sidewalks[1] and it is the duty of a city to maintain its sidewalks in reasonably safe condition.[2]

The city argues that by virtue of the temporary permit and the public policy expressed in sec. 66.045, Stats., the permittee, the contractor Klug & Smith, is primarily liable for the actionable defect.

The pertinent language of the permit is as follows:

"GUARANTEE: (Damage to city property) The permittee guarantees that he shall reimburse the City of Milwaukee for all damages to any city property resulting from his work operations and to hold the City of Milwaukee harmless in case of any accident or on account of any damages arising through the issuance of this permit, regardless of whether such damage or accident is done by himself, his agents, employees, or subcontractors."

Sec. 66.045, Stats., provides in substance that when a permit is granted to obstruct or excavate a street, that applicant shall be primarily liable for damages to the person by reason of granting the permit.

The language of the guarantee, or hold harmless provision set forth above, does not create an unlimited obligation on the part of Klug & Smith. Klug & Smith only agreed to indemnify the city for damages occasioned by Klug & Smith, its agents, employees or subcontractors.

The injury and damages to plaintiff in this instance were caused by the depression in the surface of the street. The city inspector inspected and approved the area in question for use as a temporary sidewalk. Klug

---

[1] *Trobaugh v. Milwaukee*, 265 Wis. 475, 61 N.W.2d 866 (1953); *Smith v. Jefferson*, 8 Wis.2d 378, 384, 99 N.W.2d 119 (1959).

[2] *Stippich v. Milwaukee*, 34 Wis.2d 260, 149 N.W.2d 618 (1967); *Westler v. Milwaukee*, 34 Wis.2d 272, 149 N.W.2d 624 (1967); *Kobelinski v. Milwaukee & Suburban Transport Corp.*, 56 Wis.2d 504, 202 N.W.2d 415 (1972).

& Smith did nothing to alter or change the surface of the street in any way. No act or omission on the part of the permittee or its agents or employees caused the damages to the plaintiff.

We have held that indemnity agreements are to be liberally construed when they are concerned with the negligence of the indemnitor—in this instance Klug & Smith—and strictly construed when the indemnitee, here the City of Milwaukee, seeks to be indemnified for its own negligence. There must be an express provision in the agreement to indemnify the indemnitee for liability occasioned by its own negligence. Such an obligation will not be found by implication.[3]

We conclude that the city was primarily liable and that Klug & Smith are not liable to the city by virtue of the indemnity clause of the permit. Nor is Klug & Smith liable by virtue of sec. 66.045, Stats. Klug & Smith did not do any excavation in the street nor did the temporary sidewalk enclosure in any way cause the street defect.

The city further contends that by virtue of sec. 81.17, Stats.,[4] it is not primarily liable but only secondarily.

---

[3] *Brown v. Wisconsin Natural Gas Co.*, 59 Wis.2d 334, 352–53, 208 N.W.2d 769 (1973); *Bialas v. Portage County*, 70 Wis.2d 910, 912, 918, 236 N.W.2d 18 (1975).

[4] *"Highway defects; liability of wrongdoer; procedure.* Whenever damages happen to any person or property by reason of any defect in any highway or other public ground, or from any other cause for which any town, city, village or county would be liable, and such damages are caused by, or arise from, the wrong, default or negligence thereof and of any person, or private corporation, such person or private corporation shall be primarily liable therefor; but the town, city, village or county may be sued with the person or private corporation so primarily liable. If the town, city, village or county denies its primary liability and proves upon whom such liability rests the judgment shall be against all the defendants shown by the verdict or finding to be liable for the damages; but judgment against the town, city, village or county shall not be enforceable until execution has

In *Dickens v. Kensmoe,* 61 Wis.2d 211, 220, 212 N.W.2d 484 (1973), this court stated:

"We must hold, therefore, that sec. 81.17, Stats., does not apply here since it creates a secondary liability on a town, city, village, or county, for defects in a highway which cause damage only when the negligence, wrong, or default of another tort-feasor also causally contributes that defect."

As stated above, the defect that caused the plaintiff's fall and ensuing injuries was a depression in the street. No act or omission of Klug & Smith, its agents, caused or contributed to the depression. Klug & Smith did nothing at all to the surface of the street and consequently sec. 81.17, Stats., has no application to this case.[5]

The city contends that it was error to allow Klug & Smith to change its demand for contribution as alleged in its cross-complaint to one for subrogation.

The respondents, Klug & Smith and the insurance carrier, made it clear at the hearing in the trial court that they were no longer seeking contribution but subrogation for the entire amount paid to the injured plaintiff. The city did not object to this change of position and the trial court construed this acquiescence on the part of the city as consent that issue was payment of the entire amount and not just contribution.

Failure to plead subrogation in the cross-complaint is not necessarily fatal. Sec. 269.44, Stats., 1973, effective at the commencement of the action, provided:

"*Amendments of processes, pleadings and proceedings.* The court may, at any stage of the action or special

been issued against the party found to be primarily liable and returned unsatisfied in whole or in part; . . ."

[5] The city cites *Fuhrmann v. Coddington Engineering Co.,* 156 Wis. 650, 146 N.W. 796 (1914), and *Kull v Sears, Roebuck & Co.,* 49 Wis.2d 1, 181 N.W.2d 393 (1970). These cases are distinguishable on their facts.

proceeding before or after judgment, in furtherance of justice and upon such terms as may be just, amend any process, pleading or proceeding, notwithstanding it may change the action from one at law to one at equity . . . provided, the amended pleading states a cause of action arising out of the contract, transaction or occurrence or is connected with the subject of the action upon which the original pleading is based."

In *Heritage Mut. Inc. Co. v. Thoma,* 45 Wis.2d 580, 173 N.W.2d 717 (1970), the court held that it was error for the trial court to refuse permission to amend a complaint from contribution to subrogation where the theory had support in the evidence, and where the original pleading and proof showed the underlying existence of the cause of action so that the other party could not claim surprise. Here the cause of action in subrogation is supported by the evidence and the city was given an opportunity to respond but declined to object. *Heritage* also held that sec. 269.44, Stats., was to be liberally construed. The trial court did not err in allowing the respondents to change their pleading from contribution to subrogation.

In *Perkins v. Worzala,* 31 Wis.2d 634, 637, 143 N.W.2d 516 (1966), the court held that a prayer for indemnification approximated a prayer for subrogation if the elements of a cause of action in subrogation were present. The *Perkins* court noted:

"Subrogation is an equitable doctrine, not dependent upon contract or privity, which is available when someone other than a mere volunteer pays a debt or demand which should have been satisfied by another. The purpose of the doctrine is to avoid unjust enrichment."

Although the oral argument at which respondents presented their claim for subrogation is not in the record, the facts clearly show a cause of action in subrogation. United States Fire Insurance Company, representing

Klug & Smith and First Federal, was not a mere volunteer. It paid $9,000 which should have been paid by the city (assuming that the city was negligent). As noted above, the courts favor liberal application of the doctrine of subrogation.

The city cites *Rusch v. Korth,* 2 Wis.2d 321, 86 N.W.2d 464 (1957), where the court refused to consider whether a party was entitled to subrogation where contribution was pleaded. Subsequent analyses of that case indicate that the court really did consider subrogation but termed it contribution. The case has been termed " 'an anomaly in the law.' " *Perkins v. Worzala,* 31 Wis.2d at 638.

The trial court's conclusion that the city was primarily liable to the injured party and that the respondents are entitled to full reimbursement is approved.

The city finally argues that the trial court did not find it negligent and without a finding of causal negligence it is not liable to the plaintiff. As an abstract proposition of the law this statement is, of course, true. But, in our opinion, not so in the posture of this case.

In the original complaint the plaintiff alleged that both Klug & Smith and the city were causally negligent. Both denied they were. The stipulation of facts presented to the trial court refers to the stipulation with the plaintiff and is as follows:

"7. The United States Fire Insurance Company has settled the claim of Margaret Webster on behalf of all the defendants for a total of $9,000 and has obtained a release releasing all defendants. The settlement of $9,000 is fair and reasonable and directly related to the fall of May 24, 1972. A stipulation has been entered dismissing her claim, however, the releases and stipulation executed make it clear that the cross complaints between the defendants are not to be dismissed."

Ordinarily when settlement stipulations are entered into they not only reflect an assessment of the amount of damages but an evaluation of probable determinations

of liability if the matter is to be tried. If the city intended to contest its liability because of the highway defect or the contributory negligence of the plaintiff, the time that reservation should have been made is when the stipulation was entered into and presented to the court as a basis for dismissing the complaint of the plaintiff. This issue cannot be raised at this late date.

*By the Court.*—Judgment affirmed.